2011-1057 MSHIFT v. DIGITAL INSIGHT Mr. Otteson? Yes. Yes, Your Honor. Good morning. Good morning. I'd like to start with the issue of the restructuring of input entries into selectable is that there is much more than a genuine issue of material fact on the record. If this court affirms the district court's grant of summary judgment, it will be on a record in which the defendants have admitted that their accused system grabs critical identification codes from the source code of input entries and restructures those on a mobile device. Just to sort of come down to my level, maybe you can answer this inquiry. We're talking about the input entries. How could the defendants possibly infringe? Because we're dealing with hidden data, right? And how does hidden data allow a user to enter information into a particular page? That's an excellent question, Your Honor. This whole argument about hidden data is a complete red herring. And I'll tell you why. Input entries as displayed on an online banking site, we're talking about the site that appears on a computer as opposed to a mobile device. All of the input entries are defined by source code, XHTML source code that is hidden from the user. So what you see, what you see on the screen is the name of a payee like Eric Bookbinder, and you see a payment box, a date box, and a submit button. Now, if you take a look at just as an example, this would be Exhibit M to the Supplemental Chatterjee Declaration at 4703 to 4706 of the DEI online mobile banking site. And it's gibberish. I mean, talking about bringing it down to our level, Judge, somebody like us who's not an XHTML programmer can't make heads or tails of that source code. And why is that? It doesn't even appear on the website. When we go to pay our bills and we want to do a bill pay and pay a specific payee, all we see is the name of the payee, payment boxes, and a submit button. Well, there are pages of XHTML source code that correspond to that. All of that source code is hidden. Now, defendants expert, Dr. Patel, in his declaration, and this is at 3782 to 83 of the record, correctly explained how input entries are defined in source code. They are defined by form tags. That's form in the carets. And that's the XHTML tag which defines where all the input entries are going to be. So if you look on the web page, what you actually see, Eric Bookbinder, a box for payment, a box for a payment date, and a submit button, all of those input entries are included in a container in the source code that is defined by a form tag at the top and a form tag at the bottom. Now, he then came back and said you misunderstood his declaration. The judge made a specific finding in his opinion that you mischaracterized his declaration. So if we agree with the judge on that point, what other evidence do you have to support your argument? Well, Judge O'Malley, the judge is dead wrong. He absolutely testified that the way you define input entries in HTML and XHTML is all of that code in between form tags. And there are input equals lots of different options, one of which is hidden. Now, something that's very important that I want the court to understand here. I mean, you've consistently ignored the fact that Patel came back and explained exactly what he meant and explained why your interpretation of it was wrong. What's your response to that? Because you've never really responded to that. It's a completely self-serving explanation. Here's why, Judge O'Malley, if you look at... It's self-serving because it says you're wrong? Yeah, right. I know you described a response to my question that this hidden stuff is a red herring. But that's what Dr. Patel testified to. He says hidden values could not be considered input entries because they were not displayed and therefore were not capable of having information entered into them. Why is that wrong? But that's my point. That's the point I've been making. All of that source code, not just the hidden entries, all of the source code attached as Exhibit M to Dr. Chatterjee's supplemental declaration is gibberish. All of it is hidden, not just the hidden input tags. And here's the other point that I was about to make to Judge O'Malley. If you look at page 3783 of the record, this is Dr. Patel's declaration. Up at line 7 through 9, what he says after discussing all of the code and the input tags within the form tags, he says, after the user makes input entries into the page, they typically hit a submit button and the information in all the input entries is packaged together and transmitted to the web server for further processing. This, I think, really makes my point, which is all of that gibberish, all of that source code about input tags, whether they're hidden or not, all of it is hidden to the user. But once the user decides, okay, I've input my stuff, I'm going to hit the submit button, all of the information is submitted to the server when they hit the submit button. So I think this really shows that this whole hidden input entry issue is a complete red herring. All of the source code is hidden. And the fact of the matter is defendants have admitted, and the record is very clear in their brief, and also I've submitted a lot of evidence, that their system searches on the internet banking site in the source code for specific identifying codes for those input entries. It grabs those codes and restructures them and puts those codes right into the source code for a link, which then is displayed on a mobile device. So when you see a link that says Eric Bookbinder, you want to click that to make a payment to Eric Bookbinder on your mobile phone, the source code for that link, which again is hidden to us as lay people who aren't HTML programmers or whatever, if you hit that link, then the code behind that link actually has codes that their system, they admit, pulled out of the source code on the online banking site. And put right into the source code of that link to make it appear on your mobile device, so that when you click it, then you get a payment page where you can make a payment. You want to spend a few of your last minutes on the other issue of languages, since you need to prevail on both input entries and the other issue in order to prevail here, correct? Yes, there is one last point I'd like to make on input entries, Your Honor, which is that what we've been talking about in terms of extracting codes. So you're saying every piece of tag in a source code is an input entry? No, no, it's only the source code in the form, in an input form, as Dr. Patel discusses in the record in his declaration. So all of the, and he says that right in his declaration, he says the source code associated with input entries is defined by form tags. So it's the source code in the form tags. So every single one of those is a separate input entry? All of that. Yes or no? Every single one of those is a separate input entry under your theory. Well, they all work together for the input entries for that form. I mean, that was my point with the submit button. He says, and he's right, when you hit the submit button, all of the information for all of the input entries within that form is packaged together and submitted to the server for further processing. OK, let's move on to the other. OK, I just wanted to make the point that in column 8, and I discussed this in my briefing, starting at line 17 and going through line 54, it talks about this very thing, that in order to restructure an input entry, you have to extract coding, and it says this at lines 36 to 39 in column 8, the link on the mobile device on which the request was generated includes code to enable the conversion engine to recognize the link as corresponding to a particular input entry. So the only way, Your Honors, you can restructure an input entry into a selectable link on a mobile device is to grab the identifying codes associated with the source code for that input entry, which is in a form, take those special identifying codes, and put them in a selectable link. Now languages, I think, is pretty easy. You haven't appealed the court's claim construction, so we're working from the court's claim construction of language, correct? Yes. OK. Yes. Well, I have appealed the court's claim construction, but I think that it's... Of language? Not of language. No, no, no. Yes, thank you, Your Honor. The fact of the matter is the DI online banking sites, the bill pay pages are written in XHTML, and XHTML and HTML are different. Now they say they're the same, and the judge said they were the same. At a minimum, this is a motion for summary judgment. Well, do you need a conversion engine to have the two of them work together? Yes, you have to have a conversion engine to take content in XHTML on the online banking site, and convert it so that it will display on a mobile device. But it doesn't matter whether XHTML and HTML are the same or different, even though there is a disputed issue of fact on that, because it is undisputed that there are seven style sheets in the system which direct the system to provide output in XML, not HTML. There are four more style sheets in the system which direct the system to provide output in WML, not HTML. Do you have any evidence that as it's currently programmed, that those sheets could ever be used by the user? The whole system is set up with the WIS sub-engine, the MOS sub-engine, and the XSLP engine to provide output to mobile devices. And these XSL style sheets are used by the XSLP style sheet engine to provide output to mobile devices in different languages. But they have to be programmed specifically to provide any other language, correct? That's what those XSL style sheets are, Your Honor. They are programming to provide that. You're saying the mere existence of the style sheet is enough to allow a user of a phone to export in a different language? Absolutely. What's your evidence? Point me to the record that says that. What expert testified to that effect? My expert, Dr. Chatterjee, testified to that at 4595 to 97. He also testified to it with respect to the XML style sheets at 2151 to 56. And the style sheets themselves are in the record. And this is really, you know, I think my point is made by the FinGen and Silicon Graphics cases, which say that for an apparatus claim, and this is a system claim, this is a structural claim, this is not a method claim. These cases, decided last year by this court, say that if the structure is there, and this source code is there to provide output. But you overstate FinGen. I mean, clearly there has to be the ability to use it without a reformatting or reprogramming. And you're saying that no reprogramming was necessary. So all the testimony that the defendants put in saying that in order to do that, there had to be reprogramming, you say is just not true. Well, let me just make this one point about what their witness said. Okay, well, would the output results from the application of this XSL style sheet... Where are you reading from in the transcript? I'm sorry, this is at 4929 to 4931. And I asked this guy, would the output results from this application of this XSL style sheet be in WML? Answer, yes. If you run this XSL, it comes out in WML. Then I asked him, is that different from HTML? He said, yes. So not only, your honors, do we have source code, which allows output in languages other than HTML, we have a witness confirming that if you run this WML style sheet on their system, it's going to output in WML. I see I'm well into my rebuttal time. But again, do you have any evidence from any expert that says in order to run that style sheet, you don't need reprogramming? Well, yes, your honor. My expert said that if you run that style sheet with their style sheet engine, it will come out in WML. And their witness said the same thing. This is a motion for summary judgment. All inference needed to be resolved in my favor. Thank you. We've pretty much exhausted your rebuttal time. Will we score two minutes? And we'll add two minutes to Ms. Mu's time if she needs it. Thank you, your honor. To even things up. May it please the court. I wanted to start. There's many, many grounds for affirming the summary judgment. But I wanted to start with the construction of input entries. We know a couple of things for sure in the patent. The patent tells us some things that are input entries, like text boxes, menus, things of that nature. There are things that are displayed. And there are things that a user can interact with on the page. We also know that whatever an input entry is, HTML allows only one of them. And this is, although Claim 20 is expressly not limited to HTML, Claim 20 uses the term input entry just like the rest of the claims, just like the patent, just like what was referenced in the prosecution history. So this is effectively a litmus test that tells us what is an input entry and what is not. And so if you look at things like selectable links, undisputed that in HTML, more than one selectable link was allowed to be displayed per page. Selectable links are not input entries. The same thing is true of hidden values. And this was clearly addressed in Dr. Patel's reply declaration, in which he said that HTML had things like variables, like hidden input entries, and more than one of those things could be displayed per page. Now, I wanted to address counsel's statement that source code is all hidden. That is certainly true that there is source code that sits behind an HTML page that is displayed in a browser. But there are some features in that source code that result in things being displayed. And there are some features that don't. And so if we're talking about something like a text box, there is source code that sits in behind the page that the browser reads. But we see a feature that corresponds to that source code on the page, and that's the actual box. And what's going on here is counsel is alighting things that clearly are input entries, these boxes, for example, and things that are not. So for example, the source code has plain text in it that will appear between the form tags that he's talked about. And there's just no question that text is not an input entry. And I also wanted to clarify, counsel said that Dr. Patel and his declaration at A3782 said everything between the form tag is an input entry. And that's just not the case. If you look at line 17 to 18, he said input entries appear within form tags. He did not say and never said everything in the form tag is an input entry. So you saw the example that counsel gave, Eric Buckbinder. There's a couple of boxes. There's some other text. There's a pay button. There's certain things there that are input entries, the text boxes. Under some interpretations, the submit button may be an input entry. But the name Eric Buckbinder, that's not an input entry. The link that defines Eric Buckbinder, that's a link. That's not an input entry. And so what's going on here is that there are some things that are input entries in that form, and there are some things that are not. And what mShift is pointing to are things that are not input entries. All of the data values that they say are taken come from things that are not input entries. And that is not what's being restructured. All right. So you're saying that the data value that you're taking and searching in your allegedly infringing device is data value that doesn't include the input entries? Right. So the data that's been focused on by mShift, there's one data value that is actually from the form tag. It's not in any input tag. That's the form ID. There is another piece of data that is within a hidden input tag. So there is an input type equals hidden, and then there's a data variable called mPayID. That data variable is something that the system obtains, but it's something that's within a hidden tag. It's not within a text box. But why is that a distinction? I mean, there's a reply brief that says that you essentially now have admitted that at least one of the things you search for is one of the input entries. So for example, Your Honor, if you were to look at the example of a text box, the text box is an input entry. If someone were to type in that text box and there's the data variable, what they put in that text box, that's not the input entry. That's just the data that's been entered. So that's the difference here. So with respect to the hidden attributes, what we're talking about are values that are static values that are already filled in that the user cannot interact with that aren't displayed to the user. And that's literally like the text that you would have put into the text box. The input feature, that's the input type equals hidden, is not something that the DI MMV site is concerned with. And really what's going on in the code here is they're providing directions. They're saying, go look for a form tag, and then go look for this input hidden tag. And next to it, you're going to find the data variable that you want. And that's really how the code is working. It's not concerned with taking those input tags and replacing them with links. All it's concerned with is figuring out how to find that particular piece of data that they want to use in their own site, their own separate site, and using that data for creating the pages that they have. Right. Can we move on to the other issue? Because the lower court basically said that unless there's evidence that you actually use the style sheets, that there can be no infringement. But that's not really exactly the law, is it? Well, with respect to this kind of claim, we think that is the law. So the theory that has to be present here is an indirect infringement theory. We don't make phones. Those phones are made by obviously others. They're used by users who are the ones who initiate the request. So if you're looking for what theory they have to be proceeding on, it has to be an indirect infringement theory. And so there needs to be someone who's putting the system into use, into beneficial use. And all of the evidence says... But the law is that the system has to be capable of being put into beneficial use. So requiring them to show that it had actually been used is not the law. I mean, I think we have both fronts here. The system as it exists is not capable of being used in the way that's being suggested. The testimony is that there are these legacy sheets that were in executable code, in fact, that our clients didn't even know about. But the testimony is that all of the style sheets that are used in the system appear in a single directory. And these are not style sheets that are in that directory. What MShift has never pointed to is any source code that's going to call these legacy style sheets. In fact, it's not surprising that it's not there because we didn't know about them. But is there coding that actually prevents the style sheets from being used? Well, there's no coding that allows it. So where in the record do you point to testimony that says that you have to have specific coding? Well, we can certainly point to Mr. Buckner's initial declaration in which he said, if someone tried to use a WML phone to access the site, there'd be an error. What we've seen from MShift is a lot of indirect evidence that they argue suggests that WML can be used in our system. And what we have is direct evidence from Mr. Buckner that if somebody used WML, it would not work, that they would get an error back. And so we've got a lot of evidence that suggests they talk about the method output, for example, equals XML. We actually looked at the source code. Our expert did, Dr. Patel. We looked at that source code to see what you end up with. And you end up with HTML. Their expert, under the same analysis, concluded that our pages were in Korean. And clearly, they're not in Korean. They're in English. So there's something wrong with the analysis that's being done by their expert to reach these conclusions that the output is going to be in XML or HTML or whatever it is. There's a gap between their expert and what's actually showing up on the phone. Buckner says it wouldn't work, but he never really explains why, does he? Well, I submit it wouldn't work because there's no code in the system that calls the WML style sheets. But that's you, the lawyer, saying this. But you never had anybody saying that, did you? It was their burden on summary judgment to come forward with evidence. And what we've done is we've come forward with evidence that it doesn't work. And we've never seen direct evidence that somebody using a WML phone, an HTML phone, whatever a WCML phone is or an XML phone, I don't think they even exist. There's no evidence on the record that if someone has that phone that speaks that language, they could use our system. And the only evidence, and in fact, the evidence they used in their infringement contentions was someone using an iPhone with an HTML browser. Wanted to briefly address the issue of whether or not the court found that XHTML and HTML are the same language. And I think Your Honor's question is the right one, which is if you have a browser that is trying to access an XHTML page, there's no conversion needed. There's no evidence that conversion is needed. In fact, Dr. Patel testified that that HTML phone could access a page, whether it's XHTML or HTML. This is demonstrated by the fact that numerous examples in the record of a phone directly accessing the DI online banking site, which has pages that are both HTML and in one instance, at least arguably, in XHTML. These are the same language. XHTML and HTML use exactly the same words. There's 86 tags in both languages. They are exactly the same. And the only difference between XHTML and HTML is essentially grammar. And that's their own experts saying strictly grammatical differences. I submit if you are correctly punctuating, that doesn't mean you're speaking a different language from the person who is not correctly punctuating. Sometimes it sounds that way though, right? Understood. Unless Your Honors have further questions, we'll submit. We have a couple of minutes. Thank you, Your Honor. Very briefly. Ms. Muse is referring to input entries, and the court also did, as things that appear on a page. But even the source code for a text box is not something that appears on a page. The code for that is open caret input type equals text, close caret, et cetera. Again, this is gibberish. This is hidden to all of us non-programmers. What is displayed on the page is a box that you can type in. What is very clear is if you don't grab the codes in the source code, the identifying codes that are associated with a particular payee that are associated with that box, if you type a money amount into that box without those codes, the payment will not go to the right person. So what you really have to do is you have to go into the source code on the website, and you have to take the ID code for that particular payee, and take that and put it in a selectable link, and that's exactly what they do. And again, in column 8 at line 36, it says the link on which the request was generated includes code to enable conversion engine to recognize the link on the mobile device as corresponding to a particular input entry on the network site. That's what you have to grab. It's like the car analogy that I had in my reply brief. I mean, what's displayed on the page there is a car with boxes in it that you can put payment amount and payment dates. What are you going to restructure? Are you going to take the MPEG file, the image file of the car, and restructure that? No, that's not going to work. What you have to do is take something that's analogous to a VIN number for the car, which identifies exactly whose car that is, which bill payee it corresponds to, and put that in a selectable link, because then payment will go to the right person. Otherwise, it's not going to work. And again, I would just remind the court that we are here on an appeal from summary judgment, and we submitted a huge amount of evidence. And to say that no reasonable jury could find it in our favor, I think, is a strange reason. So, I would submit. Thank you, counsel. Thank you. The case is submitted. That concludes our proceeding. All rise.